UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMNIAL ACTION

VERSUS                                      NO:  16-36 SECTION:

COREY SESSION                               "S" (1)

ORDER AND REASONS

IT IS HEREBY ORDERED that defendant Corey Session's **Motion and Supplemental**

**Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in**

**Federal Custody** (Rec. Docs. 622, 630) are **DENIED**;

IT IS FURTHER ORDERED that defendant **Corey Session's Motion for an**

**Evidentiary Hearing** (Rec. Doc. 662) is **DENIED.**

BACKGROUND

This matter is before the court on Corey Session's Motion and Supplemental Motion

Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal

Custody. Having reviewed the entire record, the court finds that this matter can be resolved

without an evidentiary hearing. It is undisputed that this matter was timely filed.

In January 2015, following up on a tip from a confidential informant, the Drug

Enforcement Administration ("DEA"), together with state and local law enforcement, initiated a

drug trafficking investigation in LaPlace and St. Rose. As part of the investigation, the DEA

obtained judicial authorization for wiretaps of telephones belonging to Session and others. Based

in part on the wiretaps, the DEA obtained search warrants for Session's residence, co-defendant

Andre Staggers' residence, and a suspected stash house.

The search of Session's residence yielded a loaded assault rifle, a loaded pistol, bottles of mannitol (a cutting agent used to dilute cocaine and heroin), drug paraphernalia, over $1,000 in cash, and mail addressed to Session. Inside the suspected stash house, the DEA seized over 500 grams of heroin, 11 grams of powder cocaine, 37 grams of crack cocaine, an assault rifle, a pistol, ammunition of various calibers, bottles of mannitol, drug paraphernalia, a money counter, $14,000 in cash, mail addressed to Session, and identification cards belonging to Session. In Staggers's residence, officers found approximately 460 grams of heroin, a loaded assault rifle, drug paraphernalia, a money counter, over $460,000 in cash, and mail addressed to Staggers.

In the third superseding indictment, Session was charged with conspiring to distribute and to possess with intent to distribute powder cocaine and heroin, using a communication facility to facilitate the commission of a drug-trafficking crime, possession with the intent to distribute 100 grams or more of heroin, possessing a firearm in furtherance of drug-trafficking crimes, and with being a felon in possession of a firearm.

A jury trial was held from August 6 to 10, 2018. Session was found guilty on all charges against him. The jury, in separate interrogatories, found that the conspiracy involved one kilogram or more of heroin and five kilograms or more of cocaine hydrochloride. The jury also found that Session knew or should have known that the conspiracy involved 1 kilogram or more of heroin; and that Session knew or reasonably should have known that the conspiracy involved 500 grams or more of cocaine hydrochloride. On July 1, 2020, the United States Court of

Appeals for the Fifth Circuit affirmed Session's conviction.[1]

Session is currently serving a sentence of mandatory life plus 60 months. Session timely filed the instant motion and supplemental motion under 28 U.S.C. § 2255 to vacate his sentence, arguing that he was denied effective assistance of counsel. He subsequently filed a motion requesting an evidentiary hearing in support of his § 2255 motion. The government has filed an opposition to defendant's motion and supplemental motion for relief under § 2255. For the reasons that follow, defendant's motions are denied.

## LEGAL STANDARD

Pursuant to section 2255, a prisoner in custody under a federal court sentence may seek relief on four bases: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255. If the district court determines that a petitioner is entitled to relief under section 2255, the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Relief under section 2255 "'is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.'" United States v. Segler, 37 F.3d 1131, 1133 (5th Cir. 1994) (quoting United States v. Vaughn, 955 F.2d 367, 368

---

[1] United States v. Staggers, 961 F.3d 745, 750–51 (5th Cir.), cert. denied, 141 S. Ct. 388, 208 (2020).

(5th Cir. 1992) (per curiam)).

In considering a § 2255 petition, the court, after reviewing the full record, must determine whether an evidentiary hearing is necessary. Rules Governing Section 2255 Proceedings, Rule 8. Courts are required to hold an evidentiary hearing unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing is not required if the petitioner fails to produce any "independent indicia of the likely merit of [his] allegations." United States v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006) (quoting United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998)). The petitioner bears the burden of establishing his claims by a preponderance of the evidence. Wright v. United States, 624 F.2d 557, 558 (5th Cir. 1980).

## DISCUSSION

### Ineffective Assistance of Counsel

Between his original and supplemental motion, Session argues that his counsel was ineffective in ten separate particulars, as addressed below.

#### 1. Failure to challenge the search warrants

Session first argues that his attorney erred in failing to challenge the search warrants for his residence at 616 Turtle Creek Street and the stash house at 501 Indigo Parkway. In order to show Strickland prejudice when alleging counsel was deficient in not filing a motion to suppress, the movant must "prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. 365, 375 (1986).

"Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim." <u>United States v. Wilkes</u>, 20 F.3d 651, 653 (5th Cir. 1994) (quotation omitted).

Session contends that he would have succeeded in a motion to suppress because the information provided to the magistrate who issued the warrants lacked the indicia of reliability to support probable cause. He argues that the affidavit in this case included only "bare bones" conclusions without necessary supporting facts regarding drug activity.

The court's review of the affidavits in support of the warrants reflects that they were not "bare bones", but rather set forth detailed facts of the investigation and connected ongoing drug activity to the Turtle Creek and Indigo Parkway properties. The same affidavit for both properties was presented to the magistrate, and it clearly outlined the specific evidence connecting these two residences to drug activity. Special Agent Powell Morris set forth his training and experience, and provided details concerning intercepted Title III wiretap calls on Session's phone and those of co-conspirators. For example, Agent Morris described a June 19, 2015 call in which agents intercepted Leonard Morrison asking Gregory London, Jr. for a "single" and needing someone to "re-mix, another one," which Morris described as being consistent with a request for a quantity of cocaine. Shortly thereafter, agents saw London's vehicle arrive at Session's Turtle Creek residence. They saw Session, Morrison, and London then enter Session's Cadillac and drive out towards River Road, and then return to Session's home. They remained in the car for several minutes, then London exited Session's car carrying a weighted down plastic bag, and Morrison also exited the car while appearing to conceal something in his hand. Agent Morris concluded that this activity was consistent with a drug deal.

5

Agent Morris also described events on September 17, 2015, when agents intercepted a call in which an unknown person asked if Session was in the neighborhood. Session replied that he would be soon. Agents then saw Session leave the Indigo Parkway residence and travel to a house in St. Rose. There, the unknown man exited a Nissan and walked to Session's car, leaned in the passenger door, and seconds later walked away holding a white object. Session then exited his vehicle and briefly spoke with the driver of the Nissan. Session then went back to his car and drove away. Session then headed back to the Turtle Creek residence, circling the neighborhood several times before pulling into the Turtle Creek driveway. Agent Morris explained that this behavior was typical of a dealer attempting to ensure he was not being followed by law enforcement. Agent Morris further explained that this drug transaction connected the two residence and suggested that he was stashing drugs and/or illegal proceeds at both locations.

In another instance, on November 6, 2015, another customer called asking Session for "two," with a price of "12" (or $1200 per ounce). Session then left the Indigo Parkway residence. Forty-five minutes later, Session was observed exiting his Turtle Creek residence and entering the passenger seat of a Toyota Tundra that had pulled up. The vehicle drove around the neighborhood, making no stops, then returned to the Turtle Creek residence where Session got out and left. Agent Morris explained that, based on his training and experience, this again was a drug transaction.

In another instance in January 2016, Session and Staggers were intercepted discussing needing a "lab rat" to experiment with some "alligator," referring to getting a user to test the quality of their drugs.

6

The foregoing itemization is a portion, not the entirety, of the incriminating activity documented in the affidavit for the search warrants Session now challenges. The court finds that it is not a bare bones affidavit, but rather demonstrates that ample probable cause existed to connect both the Turtle Creek and Indigo Parkway residence to drug trafficking. Session is therefore unable to establish that a motion to suppress the warrants would have been meritorious, and thus his attorney's decision not to file such a motion was not ineffective. Relief on this ground is denied.

**2. Failure to challenge the adequacy of the indictment**

Session argues that his attorney should have challenged the third superseding indictment as inadequate, because it charged him with possession with intent to distribute 576 grams of heroin, and the two prior indictments charged possession with intent to distribute 576 grams of cocaine. He emphasizes that penalties are greater for heroin offenses. While Session frames this challenge in terms of the inadequacy of the indictment, his issue appears not to be that the indictment itself is insufficient,[2] but that some impropriety took place that resulted in the substitution of heroin as the controlled substance at issue rather than cocaine. In this regard, he states that Agent Vinson  made intentional misstatements regarding what was found during the search.

_____

[2] An indictment is sufficient if it: "first...contains the elements of the offenses charged and fairly informs a defendant of the charge against which he must defend, and, second...enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Resendiz–Ponce, 549 U.S. 102, 108 (2007) (quotations omitted). Session does not argue that the third superseding indictment lacked the required elements of the charged offenses, failed to inform him of the charge he was required to defend, or exposed him to double jeopardy.

At trial, Agent Vinson testified that on the date of the seizure, his role was to photograph, collect, and maintain custody of the seized evidence as it was found. When the drugs at issue were first seized, they were believed to be cocaine. Vinson did not participate in that determination, which was made by another individual. Once back at the DEA offices, the drugs were field tested, weighed, then sealed in a tamper-proof evidence bag. Based on the field test, the bag was booked as cocaine. Subsequently, prior to trial, a lab test identified the substance as heroin. The government sought and the grand jury then returned a new superseding indictment to reflect the correct substance.

It is Session's position that he should not be held accountable for 576 grams of heroin, when government documents contemporaneous with the seizure reflect that the substance was cocaine. However, the inconsistency between the field test result and the lab result is not a smoking gun that should have prompted a challenge from Session's counsel. Rather, it demonstrates why a field test, which yields a presumptive but not definitive result, is always double-checked with a lab test to be used at trial, which takes more time but is more accurate. These facts are completely consistent with Vinson's testimony, and there is nothing to suggest that some impropriety with the evidence took place. The lab test demonstrated the substance was heroin rather than cocaine. Further, precisely because the change of the identity of the substance was material and potentially affected penalties, the government was required to file a superseding indictment reflecting the actual substance that was seized, because "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." Stirone v. United States, 361 U.S. 212, 215-16 (1960).

8

Moreover, this inconsistency was presented to the jury at trial, and Session's attorney cross-examined the agents in detail, specifically asking about the meaning of presumptive tests. Thus, his attorney was aware of the inconsistency and attempted to exploit it on cross-examination, which is a rational tactical decision. Session's contention that his counsel was ineffective in failing to challenge the third superseding indictment is without merit.

### 3. Failure to prevent admission of co-conspirator statements

Session argues that Agent Morris' testimony about the out-of-court statements of a non-testifying co-defendant, Luis Cotto, incriminated him, and his attorney was ineffective because he allowed it. At the trial of this matter, Agent Morris testified regarding a wiretap tape of a telephone conversation between Cotto and Session. After the tape of the September 19, 2015 phone call was played, on direct examination, the government asked Agent Morris to decode terms and pricing information conveyed during the call. Agent Morris did so, explaining that they were discussing the price per kilogram for china white heroin. Session argues that this testimony introduced the out of court statements of Cotto for the truth of the matter asserted, violating hearsay rules and the confrontation clause.

A statement is not hearsay if it is offered against a party and the statement was made by a co-conspirator of a party during the course and in furtherance of the conspiracy. FED. R. EVID. 801(d)(2)(E). Such statements do not violate the Confrontation Clause. Bourjaily v. United States, 483 U.S. 171, 173 (1987). Because a hearsay objection to these co-conspirator statements in furtherance of the conspiracy would have been overruled, counsel's failure to object was not deficient performance.

**4. Failure to object to amount of drugs Session conspired to distribute**

Session argues that his attorney's performance was deficient because he failed to object on insufficiency of the evidence grounds to the quantity of heroin he conspired to distribute. According to Session, a conspiracy to distribute one kilogram or more of heroin requires proof of "a single distribution" of one kilogram or more of heroin; insufficient evidence to establish this fact was introduced at trial; and his attorney was deficient in failing to object on that basis.

This argument is misplaced because there is simply no legal requirement that the total amount charged in a conspiracy or attributable to a defendant be involved in a single transaction. To the contrary, "[i]in a drug-conspiracy prosecution, the statutory minimum sentence applicable to a defendant depends on 'the quantity of drugs with which he was directly involved or that was reasonably foreseeable to him.'" United States v. Staggers, 961 F.3d 745, 762 (5th Cir.), cert. denied, 141 S. Ct. 388, (2020) (citation omitted). Consistent with this well-established standard, at the trial of this matter, the jury was instructed as follows:

> A quantity of a controlled substance is attributable to the defendant if the government proves beyond a reasonable doubt that the quantity of the controlled substance was within the scope of the conspiracy after the defendant joined the conspiracy and the defendant knew or should have known that the quantity of controlled substances was involved in the conspiracy. The attributable amount includes all quantities of a controlled substance with which the defendant was directly involved, as well as all reasonably foreseeable quantities that were within the scope of the conspiracy that he joined.

Applying this instruction, the jury returned a guilty verdict finding that the scope of the conspiracy involved one kilogram or more of heroin and five kilograms or more of cocaine. Session challenged this verdict on sufficiency grounds on direct appeal and the Fifth Circuit

specifically found that there was "more than enough evidence for us to conclude that the jury's finding was adequately supported by the evidence." 961 F.3d at 762.

There being no legal basis for this challenge, Session's attorney can not have been deficient in failing to raise one.

### 5. Failure to object to PSR based on findings regarding drug amount

Session further argues that his attorney was ineffective due to his failure to object to the PSR, and have the court conduct individualized findings as it related to drug amount. A review of the record reflects that the factual premise of this argument is false. In addition to the jury's finding regarding the amount of drugs involved in the conspiracy, discussed supra, the jury made a specific finding regarding the quantity of drugs attributable to Session individually. Specifically, the jury determined beyond a reasonable doubt that Session individually knew or reasonably should have known that one kilogram or more of heroin and 500 grams or more of cocaine were involved in the conspiracy. The PSR reflects that at sentencing, the court considered the individualized findings regarding Session, PSR ¶ 112, and thus there was no basis for his attorney to object based on a lack of an individualized quantity finding. His failure to do so was not deficient performance.

### 6. Failure to object to verdicts on Counts 16, 18 and 24-26

Session argues that his attorney should have objected to the court's sentencing him on Counts 16, 18, and 24-26 because the jury never made a guilty finding on those counts. This argument stems from Session's confusion occasioned by the use of a modified trial indictment at the trial of this matter. Prior to trial, the parties agreed that, because the third superseding

indictment included charges against defendants who had pleaded guilty, the government would provide a streamlined trial indictment that omitted those counts to avoid juror confusion. See Rec. Doc. 231 (third superseding indictment); Rec. Doc. 341 (verdict form). Comparing the indictment and verdict form side by side reflects that the jury's verdict on Counts 13 through 15 corresponds with Counts 16 through 18 of the third superseding indictment. The jury's verdict on Counts 19 through 21 corresponds to Counts 24 through 26 of the third superseding indictment. The counts on the verdict form are clearly labeled with descriptions of the offenses which match the corresponding counts in the indictment. Session was convicted and sentenced solely on the counts that he was actually charged with, which is reflected in his judgment. Accordingly, there was no basis for Session's attorney to object based on the counts for which he was sentenced, and his failure to raise such an objection was not deficient performance.

### 7. Failure to inform Session of his right to testify on his behalf

In his supplemental memorandum, Session argues that his attorney was deficient because he failed to inform Session of his constitutional right to testify on his own behalf.  It is well-settled that "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." Rock v. Arkansas, 483 U.S. 44, 49 (1987). "This right can be waived only by the defendant, not by his counsel." Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997) (citations omitted).

According to Session, he asked to testify, and his attorney told him he would not put him on the stand because he considered doing so an unsound trial strategy, without informing him that the decision was ultimately Session's. Session further argues that had he testified, a different

result would have been obtained.  However, Session has failed to submit proof that he was

denied that right, or that his failure to testify prejudiced the outcome of his trial.

As the Seventh Circuit explained when presented with this type of claim:

It is extremely common for criminal defendants not to testify, and there are good
reasons for this, as we have seen. Yet it is simple enough after being convicted for
the defendant to say, "My lawyer wouldn't let me testify. Therefore I'm entitled to
a new trial." That's what [the defendant] did.

[T]this barebones assertion by a defendant ... is insufficient to require a hearing or
other action on his claim that his right to testify in his own defense was denied him.
It just is too facile a tactic to be allowed to succeed. Some greater particularity is
necessary – and also we think some substantiation is necessary, such as an affidavit
from the lawyer who allegedly forbade his client to testify – to give the claim
sufficient credibility to warrant a further investment of judicial resources in
determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir.1991).

In the present case, Session has provided no proof that his attorney did not permit him to

testify or inform him of his right to testify. In addition to the fact that he provided no affidavit

from his attorney, he did not provide his own affidavit attesting to the events surrounding the

decision for him not to testify. Even after the government pointed out this defect in his proof in

its opposition, Session filed a reply which also did not provide any substantiation for this claim.

Moreover, the Fifth Circuit has held that while "[p]reventing one's client from testifying

at his criminal trial constitutes deficient performance under Strickland, . . . . [t]he analysis,

however, does not end there. Courts must also determine whether such performance was

prejudicial." United States v. Arledge, 597 F. App'x 757, 760 n.5 (5th Cir. 2015) (citing United

States v. Mullins, 315 F.3dd 449, 456–57 (concluding that not allowing the defendant to take the

13

stand was "sound trial strategy" and thus not prejudicial under Strickland); Johnson v. Cain, 712 F.3d 227, 232 n. 3 (5th Cir.) (noting that counsel's interference with a defendant's right to testify is subject to harmless error review), cert. denied, 571 U.S. 958 (2013)). In this vein, the Fifth Circuit has held that, even though a defendant had alleged that he was kept off the stand by his attorney, the defendant could not establish prejudice because "a denial by [the defendant" from the stand would come at a high price," including having to deny a prior signed statement and having his "extensive criminal record and drug use come into evidence." Mullins, 315 F.3d at 456.

In this case, Session cannot meet this burden of proving prejudice. As the Fifth Circuit explained in affirming his conviction, the evidence against Session was overwhelming. The DEA seized over 900 grams of heroin from Session's and Staggers' homes. The jury heard phone calls connecting Session to Staggers and establishing that Session and Staggers were in the heroin-dealing business together. In addition, Session has an extensive criminal record that would have been exposed to the jury had he testified, including distribution of cocaine, possession of 28 grams or more of cocaine, and simple possession of cocaine. On this record, Session cannot establish that his failure to testify prejudiced him. He is not entitled to relief on this claim.

**8. Failure to object to leg shackles during trial**

Session asserts that his attorney was ineffective because he failed to object to Session being placed in leg shackles during trial, which he argues deprived him of the presumption of innocence.

14

"While shackling of a defendant at trial can be a due process violation, the Supreme Court has stated that this violation occurs where there is no 'adequate justification' for the shackling and the 'shackles ... will be seen by the jury.' " Ramirez v. Stephens, 641 F. App'x 312, 320 n. 8 (5th Cir. 2016) (quoting Deck v. Missouri, 544 U.S. 622, 635 (2005)). "Our court has found that, in habeas, a writ based on this error will only issue 'when [the] error had a "substantial and injurious effect or influence in determining the jury's verdict." ' " Id. (quoting Hatten v. Quarterman, 570 F.3d 595, 604 (5th Cir.2009) (quoting Fry v. Pliler, 551 U.S. 112, 121–22 (2007))). The Fifth Circuit has held that "[p]hysical restraint may be justified where there is 'a danger of escape or injury to the jury, counsel, or other trial participants.'" United States v. Fields, 483 F.3d 313, 357 (5th Cir. 2007) (quoting United States v. Joseph, 333 F.3d 587, 591 (5th Cir. 2003)). Furthermore, even though "a district court's failure to assign reasons for physically restraining a defendant" is erroneous, it "is not 'reversible error' where those reasons 'are readily apparent ... from the record.'" United States v. Fields, 483 F.3d 313, 357 (5th Cir. 2007) (quoting United States v. Hope, 102 F.3d 114, 118 (5th Cir. 1996)).

In this case, it is readily apparent that there was adequate justification for the shackles, and steps were taken to ensure that the shackles were not seen by the jury. Defendant had a prior history of felonies, including one for aggravated battery that was pleaded down from illegal discharge of a firearm from a motor vehicle. His prior drug felonies exposed Session to a mandatory life sentence. Critically, on the morning of trial, a glass shank was confiscated from the shoe of one of his co-defendants. On this record, and consistent with U.S. Marshals protocols, shackles were deemed necessary and appropriate.

15

At trial, the counsel tables were draped in skirts to conceal the shackles. Further, prior to the jury being brought in, the court addressed counsel, informing them that neither they nor the defendants should stand up for the judge or the jury, to prevent the jury from seeing the shackles. Session was seated next to his attorney so that he did not need to stand to confer with him. While Session speculates that the jury "likely observed or heard" clinking noises on a few occasions when he stood up, this unsubstantiated assertion does not establish a substantial and injurious effect or influence in the jury's determination of the verdict. Thus, Session cannot show prejudice and he is not entitled to relief on this ground.

### 9. Failure to subpoena a forensic or chemical expert

Session argues that his attorney was deficient in failing to subpoena a forensic or chemical expert to testify regarding the alleged alteration of the controlled substance seized at the Indigo Parkway stash house. He also contends that he did not touch any of the drugs, and therefore a fingerprint expert could have exonerated him.

The decision to call an expert witness falls "well within the realm of trial strategy." Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) Further, Session cannot establish that he was prejudiced by the failure to call these witnesses. As discussed supra, Session's attorney cross-examined agents on the inconsistency between the field test and the lab test of the controlled substance that was seized. His attorney also highlighted that no fingerprint evidence was collected at the scene. It is pure speculation on Session's part that a chemical or forensic expert's testimony would have bolstered his case. To the contrary, if the expert testimony established that lab tests routinely varied from field tests, the testimony would have buttressed

16

the government's case. Moreover, substantial evidence linked Session to the Indigo Parkway

stash house, including the presence of his identification card and mail addressed to him. Thus, a

juror could reasonably conclude that fingerprint evidence was irrelevant to establish Session's

connection to the drugs seized there. In the absence of proof that the expert testimony would be

favorable, Session cannot make the requisite showing that his attorney was deficient in failing to

introduce it.

### 10. Failure to anticipate a change in the law regarding sentencing

Session argues that his attorney was deficient because he failed to seek a continuance of

the sentencing until after the enactment and effective date of the First Step Act, thereby

depriving of the opportunity to receive a significantly lesser sentence under the First Step Act.

Session was sentenced on December 6, 2018. Legislative history reflects that the bill

providing for the First Step Act was introduced on March 29, 2017.[3] Following amendments in

both houses, as of November 2018, disagreement still existed regarding its scope. On November

15, 2018, Senator Grassley introduced a version that incorporated new sentencing reform

provisions.[4] Multiple additional amendments, some of them highly controversial, were

introduced in the days leading up to the Act being signed into law on December 21, 2018.

Thus, as of the date of Session's sentencing, the ultimate sentencing reforms had not been

introduced, and the passage of the First Step Act was uncertain. His attorney cannot be faulted

for failing to predict how Congress would act, or what would ultimately be included in the Act.

---

[3] https://www.congress.gov/bill/115th-congress/senate-bill/756.

[4] https://www.congress.gov/bill/115th-congress/senate-bill/3649.

17

"[A]n attorney's failure to anticipate a new rule of law [is] not constitutionally deficient." United States v. McNamara, 74 F.3d 514, 516 (4th Cir. 1996); see also, United States v. Frazier, 2015 WL 5595611, at *5 (M.D. La. Sept. 21, 2015) (holding counsel not deficient for failing to seek continuance of sentencing in anticipation of Fair Sentencing Act ("FSA")). Counsel's failure to seek a continuance of Session's sentencing based on the possibility that an advantageous sentencing law might be enacted is simply not deficient, and this ground for relief is baseless.

***Motion for Evidentiary Hearing***

"A motion brought under 28 U.S.C. § 2255 can be denied without a hearing only if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." United States v. Bartholomew, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam). An evidentiary hearing is not required if the petitioner fails to produce any "independent indicia of the likely merit of [his] allegations." United States v. Edwards, 442 F.3d 258, 264 (5th Cir. 2006) (quoting United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998)).  However, "an evidentiary hearing may be warranted when a defendant introduces specific factual allegations supported by the affidavit of a reliable third person." United States v. Blake, 2021 WL 2763300, at *2 (5th Cir. Mar. 24, 2021) (internal quotations and citation omitted).  But conclusory allegations, unsubstantiated by evidence, do not support the request for an evidentiary hearing. United States v. Auten, 632 F.2d 478, 480 (5th Cir.1980).

While Session indicates in his motion for evidentiary hearing that if held, he and his attorney would testify, he supplies no affidavit from his attorney regarding the nature of such testimony, nor any affidavit from himself supporting his claims. These assertions are too

conclusory to establish the necessity of an evidentiary hearing. Further, only two of Session's alleged grounds for relief implicate factual issues where his attorney could provide favorable testimony: his allegation that his attorney did not inform him that the decision not to testify was Session's, and his allegation that the jury likely heard the clanking of his shackles during the trial. However, for both of these claims, the court has concluded that if true, Session has failed to establish the requisite prejudice. Accordingly, the record in this case conclusively reflects that Session is not entitled to habeas relief. The motion for evidentiary hearing is therefore denied.

For all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendant Corey Session's **Motion and Supplemental Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody** (Rec. Docs. 622, 630) are **DENIED**;

**IT IS FURTHER ORDERED** that defendant **Corey Session's Motion for an Evidentiary Hearing** (Rec. Doc. 662) is **DENIED.**

New Orleans, Louisiana, this  10th  day of February, 2022.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**